## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| | ) **CRIMINAL NO.** 14 cr 10206 |
| v. | ) |
| | ) **VIOLATIONS:** |
| **MARCELLUS LOPES LEE,** | ) |
| Defendant. | ) **18 U.S.C. §1343 (Wire Fraud)** |
| | ) **18 U.S.C. §1957 (Monetary Transactions** |
| | ) **in Property Derived from Specified** |
| | ) **Unlawful Activity)** |
| | ) |
| | ) **18 U.S.C. §981 and** |
| | ) **28 U.S.C. §2461 –** |
| | ) **(Criminal Forfeiture** |
| | ) **Allegation)** |
| | ) |

## INDICTMENT

The Grand Jury charges that:

## BACKGROUND

1.      At all times relevant to this Indictment, defendant **MARCELLUS LOPES LEE** ("**LEE**") was an individual living in Massachusetts.

2.      At all times relevant to this Indictment, **LEE** was the owner and operator of an entity called Taurus Global Markets Ltd. ("TGM"), a company incorporated in Belize and the Commonwealth of the Bahamas, and doing business in Massachusetts and elsewhere.

3.      The foreign exchange market, commonly known as the "forex" market, refers to the worldwide market for national currencies. **LEE** falsely held TGM out as being, among other things, a company that executed transactions in the forex market on behalf of investors.

4.      D.B., H.B., J.B., M.B., R.C., Y.C., E.D., L.D., B.F., A.H., T.H., T.M.H., D.J., A.L., C.L., D.M., G.M., H.P., J.P., J.S.,  N.S., D.T., R.T., J.W., are individuals known to the

1

Grand Jury who are among the victims of the fraud scheme set forth herein.

## THE FRAUD SCHEME

5.   Beginning in or about 2007 and continuing until in or about 2009, **LEE** devised and executed a fraudulent scheme by which individuals were induced to wire funds to TGM's bank accounts in Belize for the purpose of trading in the forex market when, in fact, **LEE** never intended to use the funds for that purpose, but instead converted the funds to **LEE's** own personal and other uses.

6.   In furtherance of this fraudulent scheme, **LEE** did the following, among other things:

   a.   Incorporated TGM in Belize and the Bahamas;

   b.   Established bank accounts in TGM's name at Belize Bank International in Belize;

   c.   Represented to investors and others that TGM's main office was located in the Commonwealth of the Bahamas when, in fact, as **LEE** well knew, **LEE** operated TGM primarily from his residence in Massachusetts and merely arranged for telephone and mail services in the Bahamas. **LEE** further arranged for all telephone calls and fax calls made to the Bahamas telephone numbers listed on TGM's website and other documents, to be automatically routed to **LEE's** telephone and fax numbers in Massachusetts.

   d.   Held TGM out as a legitimate firm in the business of conducting forex trading on behalf of investors, when in fact, as **LEE** well knew, TGM did not engage in forex trading on behalf of investors, but was

2

instead simply a front company that **LEE** used to obtain money from investors to convert to **LEE's** personal and other uses;

e.  Established a website for TGM that represented, among other things, that TGM had staff, management and its computer network "distributed all across the world," when in fact, as **LEE** well knew, TGM had no employees, and **LEE** operated TGM primarily from his residence in Massachusetts;

f.  Represented on TGM's website that investors' funds were "legally protected and held in escrow," when in fact, as **LEE** well knew, all funds received from investors were commingled together in TGM's two bank accounts in Belize, and were used by **LEE** for his own personal and other uses;

g.  Entered into agreements with Introducing Brokers ("IB"), including FX Quote, Interbank Group, and International Foreign Currency LLC, for those firms to refer prospective forex investors to TGM. **LEE** represented that TGM would open accounts for the investors, carry out forex transactions as ordered by the investors or the IBs on their behalf, and pay commissions to the IBs for such transactions. In fact, as **LEE** well knew, he did not intend to carry out forex transactions as ordered by investors or by IBs on behalf of investors;

h.  Represented that TGM would provide "instantaneous execution" of forex transaction orders placed by its investors or by IBs on their behalf. **LEE** caused TGM to provide a software trading platform to

3

investors and IBs that purported to enable them to trade forex in their
accounts as executed by TGM.  In fact, as **LEE** well knew, **LEE** did not
cause any forex transactions ordered by investors or IBs on their behalf to
be executed;

i.      Caused prospective investors to wire funds directly to one of
TGM's Belize bank accounts;

j.      Arranged for investors to have online access to what he
represented to be their individual account information – including
transactions and balances – when, as **LEE** well knew, that account
information was false and did not reflect the actual disposition of
investors' funds;

k.      Caused emails to be sent to investors purporting to reflect forex
transactions in their accounts.  In fact, as **LEE** well knew, no such forex
transactions were executed, and the reports of such transactions sent to
investors were entirely fabricated.

l.      Represented to investors that all or most of their investment had
been lost in forex transactions when, as **LEE** well knew, no actual forex
transactions had occurred in those accounts, and **LEE** had instead simply
converted investors' funds to his own use;

m.      Caused some funds to be returned to investors, representing that
the amounts being returned were what remained after the rest of the
investors' funds had been lost in forex transactions.  In fact, as **LEE** well
knew, the returned funds came from money obtained from other investors,

4

and was intended by those investors to be used for forex transactions in
their own accounts; and

    n.    Converted to his own personal and other uses most of the money
sent by investors to TGM's accounts for forex investment.

7.    By this fraudulent scheme, **LEE** defrauded at least 65 individuals of more than

$3.4 million.

5

## COUNTS 1-16

## WIRE FRAUD
## (18 U.S.C. §1343)

8.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-7 of the

Indictment, and further charges that:

9.     On or about the dates set forth below, in the District of Massachusetts and

elsewhere, the defendant,

## MARCELLUS LOPES LEE

having devised and intending to devise a scheme and artifice to defraud and to obtain money and

property by means of materially false and fraudulent pretenses, representations and promises, for

the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by

means of wire communications in interstate commerce, writings, signs, signals, pictures, and

sounds, as follows:

| COUNT | DATE (on or about) | WIRE TRANSMISSION |
|-------|--------------------|--------------------|
| 1 | April 29, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to A.L. in Trinidad and Tobago confirming receipt of $500,000 |
| 2 | June 10, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to R.C. in Ohio confirming receipt of $15,000 |
| 3 | June 10, 2008 | Account opening documents faxed from A.H. in California to Taurus Global Markets in Massachusetts |
| 4 | June 11, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to M.B. in Texas confirming receipt of $200,000 |

| 5 | July 10, 2008 | Email of Daily Confirmation sent from **LEE** in Massachusetts using support@tgmfx.com email address to Y.C. in New York |
| 6 | July 15, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to D.J. in California confirming receipt of $80,000 |
| 7 | July 31, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to B.F. in Canada confirming that $49,975 deposit was available for trading |
| 8 | August 1, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to L.D. in Canada confirming receipt of $50,000 |
| 9 | August 7, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to H.P. in Nevada confirming receipt of $50,000 |
| 10 | August 13, 2008 | $30,000 wire from the account of J.W. in Massachusetts to a Taurus Global Market account in Belize |
| 11 | September 15, 2008 | Account documents for C.L. faxed from Canada to Massachusetts |
| 12 | September 16, 2008 | Account documents for N.S. faxed from Canada to Massachusetts |
| 13 | September 30, 2008 | Email of Monthly Statement sent from **LEE** in Massachusetts using support@tgmfx.com email address to T.M.H. in Maryland |
| 14 | October 10, 2008 | Account documents for G.M. sent by email from California to Massachusetts |
| 15 | November 26, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to H.B. in Indiana confirming receipt of $500,000 |

| 16 | December 10, 2008 | Email sent from **LEE** in Massachusetts using support@tgmfx.com email address to D.B. in Kentucky confirming receipt of $250,000 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**COUNTS 17-22**

**MONETARY TRANSACTIONS IN PROPERTY DERIVED FROM
SPECIFIED UNLAWFUL ACTIVITY
(18 U.S.C. §1957)**

10.     The Grand Jury re-alleges and incorporates by reference paragraphs 1-7 of the

Indictment, and further charges that:

11.     On or about the dates set forth below, in the District of Massachusetts and

elsewhere, the defendant,

**MARCELLUS LOPES LEE**,

did knowingly engage and attempt to engage in monetary transactions in criminally derived

property that was of a value greater than $10,000 and was derived from specified unlawful

activity, to wit, wire fraud, as follows:

| COUNT | DATE (on or about) | MONETARY TRANSACTION |
|---|---|---|
| 17 | December 22, 2008 | Electronic funds transfer of $48,000 from Taurus Global Market's xxx5000 account at Belize Bank to a Citizens Bank account in the name of Jake Kaplans Inc. for the purchase of a vehicle |
| 18 | January 5, 2009 | Electronic funds transfer of $188,188.02 from Taurus Global Market's xxx5000 account at Belize Bank to Citizens Bank account number xxxx2674 in the name of Law Office of Douglas M. Mercurio PC for the purchase of real property located at 66 Centre Street, Quincy, Massachusetts |
| 19 | April 15, 2009 | Electronic funds transfer of $142,697 from Taurus Global Market's xxx5000 account at Belize Bank to Eastern Bank account number xxxx5414 in the name of Marco and Sons Inc. for the construction of a house at 66 Centre Street, Quincy, Massachusetts |

| 20 | June 29, 2009 | Electronic funds transfer of $147,190 from Taurus Global Market's xxx5000 account at Belize Bank to Eastern Bank account number xxxx5414 in the name of Marco and Sons Inc. for the construction of a house at 66 Centre Street, Quincy, Massachusetts |
|----|---------------|------------------------------|
| 21 | September 11, 2009 | Electronic funds transfer of $40,000 from Taurus Global Market's xxx5000 account at Belize Bank to Eastern Bank account number xxxx5414 in the name of Marco and Sons Inc. for the construction of a house at 66 Centre Street, Quincy, Massachusetts |
| 22 | October 29, 2009 | Electronic funds transfer of $50,000 from Taurus Global Market's xxx5000 account at Belize Bank to Eastern Bank account number xxxx5414 in the name of Marco and Sons Inc. for the construction of a house at 66 Centre Street, Quincy, Massachusetts |

All in violation of Title 18, United States Code, Sections 1957 and 2.

10

## WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. §981 and 28 U.S.C. §2461)

The Grand Jury further charges that:

12.     Upon conviction of one or more of the offenses in violation of 18 U.S.C. §1343

alleged in Counts 1-16, the defendant,

### MARCELLUS LOPES LEE,

shall forfeit to the United States, pursuant to 18 U.S.C. §981(a)(1)(C) and 28 U.S.C. §2461(c),

any property, real or personal, that constitutes or is derived from proceeds traceable to such

violations, including but not limited to the following:

    a.     the real property located at 66 Centre Street, Quincy, Massachusetts,
           including all buildings, appurtenances, and improvements thereon, more
           fully described in a Quitclaim Deed recorded with the Norfolk County
           Registry of Deeds on January 8, 2009, in Book 26246, Page 208, and

    b.     one black 2010 Jeep Commander, bearing vehicle identification number
           1J4RG4GK6AC137097, and Massachusetts registration 149CR3.

13.     If any of the property described in paragraph 12 hereof as being forfeitable, as a

result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of this Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided
           without difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. §2461(c), incorporating 21 U.S.C.

§853(p), to seek forfeiture of all other property of the defendant up to the value of the property

described in paragraph 12.

    All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United

States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. §982)

The Grand Jury further charges that:

14.     Upon conviction one or more of the offenses in violation of 18 U.S.C. §1957

alleged in Counts 17-22, the defendant,

### MARCELLUS LOPES LEE,

shall forfeit to the United States, pursuant to 18 U.S.C. §982, any property, real or personal,

involved in such offense, or any property traceable to such property, including but not limited to

the following:

> a.  the real property located at 66 Centre Street, Quincy, Massachusetts, including all buildings, appurtenances, and improvements thereon, more fully described in a Quitclaim Deed recorded with the Norfolk County Registry of Deeds on January 8, 2009, in Book 26246, Page 208, and
>
> b.  one black 2010 Jeep Commander, bearing Vehicle Identification Number 1J4RG4GK6AC137097, and Massachusetts Registration Number 149CR3,

15.     If any of the property described in paragraph 14 hereof as being forfeitable, as a

result of any act or omission of the defendant:

> a.      cannot be located upon the exercise of due diligence;
>
> b.      has been transferred or sold to, or deposited with, a third party;
>
> c.      has been placed beyond the jurisdiction of this Court;
>
> d.      has been substantially diminished in value; or
>
> e.      has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. §982(b), to seek forfeiture of all

other property of the defendant up to the value of the property described in paragraph 14 above.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL

FOREPERSON OF THE GRAND JURY

ASSISTANT U.S. ATTORNEY

DISTRICT OF MASSACHUSETTS;  July 10, 2014.

Returned into the District Court by the Grand Jurors and filed.

7-10-14
@ 2:25 PM